IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.  Case No. 2:15cr129

LARRY CARL HOMAN,

        Defendant.

**POSITION OF THE DEFENDANT WITH RESPECT TO SENTENCING FACTORS**

      COMES NOW the Defendant, Larry Carl Homan, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report and that he has one objection to the report that does not effect the advisory guideline range and states his position with respect to sentencing factors.

**PROCEDURAL BACKGROUND**

      On December 21, 2015, Mr. Homan pled guilty, pursuant to a plea agreement, to Count One of a four-count Indictment filed October 7, 2015. Count One charges Mr. Homan with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). Mr. Homan entered his guilty plea before Magistrate Judge Leonard. This case was continued for sentencing and the preparation of a Pre-Sentence Report.

      The Pre-Sentence Report ("PSR") has been prepared and disclosed to the parties. The Sentencing Hearing is scheduled for March 21, 2016 at 2:30 p.m.

      At the sentencing hearing, Mr. Homan will be moving for a sentence of 180 months

imprisonment, the mandatory minimum, which is a sentence that complies with the sentencing factors set forth in Title 18, United States Code, Section 3553(a).

## OBJECTION

1. Paragraph 10. The defense objects to the allegations contained in this paragraph. This objection does not effect the advisory guideline range and the defense is not seeking a ruling from the Court on this objection. Rather, this objection is being made in the event that the Chesapeake authorities institute criminal charges against Mr. Homan for the conduct described in this paragraph.[1] Defense counsel's concern is that a failure to object could be construed as a tacit admission by Mr. Homan.

## THE APPROPRIATE SENTENCE IN THIS CASE

The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). The "sufficient but not greater than necessary" requirement is not just another factor to be considered along with those set forth in § 3553(a), but instead sets an independent limit on the sentence.

Accordingly, the law must "tak[e] into account the real conduct and circumstances involved in sentencing," *Gall v. United States*, 552 U.S. 38, 54 (2007), as well as the defendant's personal history and characteristics, 18 U.S.C. § 3553(a)(1). Since the guidelines cannot do this, the Court must do so, i.e., "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment

---

[1] Mr. Homan was previously charged with a total of six charges in the Chesapeake Juvenile and Domestic Relations District Court pertaining to the conduct described in this paragraph. These charges were nolle prossed on October 27, 2015. *See* PSR ¶ 65. Upon information and belief, these charges may be re-instituted against Mr. Homan.

to ensue." *Id.* at 52. None of the sentencing factors are to be given greater weight than the other factors. The sentencing range advised by the Guidelines is greater than necessary to address the sentencing factors. Rather, in this case, a sentence of 180 months imprisonment would be the appropriate sentence.

## Nature and Circumstances of the Offense

The offense is production of images of minors engaging in sexually explicit conduct (production of child pornography). The "offense conduct" section of the PSR and the Statement of Facts sets forth the facts and circumstances of the offense and Mr. Homan's conduct. Mr. Homan's crime is a very serious one.

To his credit, Mr. Homan recognizes that he has a serious problem and knows what he did was wrong and that three is something wrong with him. Also, to his credit, Mr. Homan pled guilty not wanting to put anyone or his victims through a trial. In sum, he has accepted responsibility for his conduct and hopes to receive sex offender treatment and counseling while in prison.

## History and Characteristics of Mr. Homan

Mr. Homan comes before the Court ashamed, in poor health and at an age far above most defendants who appear before this Court for sentencing in a criminal matter. He is facing a mandatory minimum sentence of fifteen years and a recommended guideline sentence of thirty years of imprisonment. A guideline sentence is a life sentence for Mr. Homan as is, most likely, the minimum sentence.

Mr. Homan was born in Syracuse, New York in 1944. He was raised by both parents and was well provided for and enjoyed playing baseball as a child. He has three sisters, two of whom

are alive. Mr. Homan's father died sixteen years ago but his mother is still alive and living in Syracuse, New York in an assisted living facility.

Mr. Homan's parents were loving and provided the appropriate discipline to him and his sisters. His mother "ruled the roost" and Mr. Homan has described his father as "the best father anyone can wish for." Mr. Homan recalls his dad coming home from work tired but still always having time to play ball with him in the yard. Mr. Homan was never physically abused by his parents or exposed to violence. He has only one memory of his parents ever arguing with each other.

Mr. Homan's otherwise happy childhood is significant for being sexually abused by a neighbor when he was eleven or twelve years old. This abuse continued for a number of years and undoubtedly affected Mr. Homan in many ways.

Mr. Homan stopped attending high school in the 11th grade and never returned to formal education. He stopped going to school to work. Mr. Homan has worked all of his life primarily as a truck driver. He is also a veteran having served in the United States Navy from 1962 to 1966 and in the United States Coast Guard from 1972 to 1975. PSR ¶s 90 and 91.

Mr. Homan has never had any substance abuse problems or issues. He has never been convicted of any crimes.

Mr. Homan has been married three times. He married his first wife in 1968 and they had three children together: a son (age 43) and two daughters (ages 41 and 44). After ten years of marriage, they separated and later divorced. They later reconciled and were living together when she died in 2010. Mr. Homan was married to his second wife for about seven years before they divorced. Mr. Homan was married to his third wife for about five years before they also divorced.

Mr. Homan's two daughters live in Norfolk, Virginia and his son lives in New York. Mr. Homan has seven grandchildren. Mr. Homan and his son are estranged due to the instant offense.

Mr. Homan suffers from chronic obstructive pulmonary disease ("COPD"), emphysema, diabetes and high blood pressure. PSR ¶ 75. Prior to his incarceration, Mr. Homan was treated for these conditions at the VA hospital in Hampton, Virginia. He has been receiving a number of medications at the Western Tidewater Regional Jail. *See* PSR ¶ 75. Mr. Homan's mental health history is significant for attempting suicide on two occasions in 1991.

As far as the offense is concerned, as noted above, Mr. Homan is ashamed and knows there is something wrong with him. He recognizes the need for treatment and welcomes it.

**Seriousness of the Offense/Promoting Respecting for the Law/**

**Providing Just Punishment**

A sentence of 180 months imprisonment would reflect the seriousness of the offense, promote respect for the law and provide just punishment to Mr. Homan. Fifteen years imprisonment is a <u>substantial</u> sentence - more so for Mr. Homan given that he is 71 years old. Fifteen years in prison is indicative of a serious offense, which Mr. Homan's offense is, and it promotes respect for the law.

It is also worth noting that at his age, fifteen years incarceration will be "harder" time to serve for Mr. Homan as opposed to younger inmates. He currently suffers from chronic obstructive pulmonary disease ("COPD"), emphysema, diabetes and high blood pressure. PSR ¶ 75. Mr. Homan takes multiple medications for these conditions and as he ages, he will likely experience additional health problems. Given Mr. Homan's medical needs, and ailing health given his age, an incarceration period beyond 180 months will only further increase the Bureau of Prison's

incarceration costs and squander the already limited health services. In a recent study by the Office of the Inspector General for the United States Department of Justice (OIG) on the impact of the aging inmate population on the Federal Bureau of Prisons (BOP), the OIG found that "aging inmates are more costly to incarcerate than their younger counterparts due to increased medical needs." U.S. Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at I, 10 (May 2015), *available at* https://www.bop.gov/policy/progstat/5050_049_CN-1.pdf [hereinafter Report]. In fact, the Report states that, "Aging inmates on average cost 8 percent more per inmate to incarcerate than inmates age 49 and younger." *Id.*[2] The cost differential is driven by increased medical needs, including the cost of medication, for aging inmates such as Mr. Homan. *See id.* at ii.[3] Given Mr. Homan's current medical needs, and expanding future needs, a sentence of more than 180 months is greater than necessary and will prevent an overly lengthy sentence that would only advance the rising financial burdens of the Bureau of Prisons.

Likewise, a prison setting is not a healthy environment for Mr. Homan, as incarceration would only aggravate his existing health problems and accelerate potential health issues. In its Report, the OIG also found that "BOP institutions lack appropriate staffing levels to address the needs of an aging inmate population and provide limited training for this purpose." *Id.* Not only do institutions have limited medical staff on the premises, they also lack staff to drive inmates to medical appointments outside of the institution. *Id.* at ii, 16-17. Consequently, "the average wait

---

[2] In fiscal year 2013, the average aging inmate cost $24,538 to incarcerate, compared to the average younger inmate, which cost $22, 676. Report at i-ii, 10.

[3] In addition to paying for outside medical care, the BOP spent $53 million in overtime to transport inmates to outside medical care, a 17 percent increase from the $46 million spent in fiscal year 2009. Report at 15.

time for inmates, including aging inmates, to be seen by an outside medical specialist for cardiology, neurosurgery, pulmonology, and urology [can be] 114 days." *Id.* at ii, 17. Thus, the more Mr. Homan ages and his medical conditions worsen, his need for increased assistance may be hampered given the delays in receiving medical care from the BOP. *See* Report at 17.

Upon release from a fifteen year sentence, Mr. Homan will have to register as a sex offender, with the publication of that information to the community and his friends and neighbors. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g.*, *United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of *Gall*, overruling its prior holding that it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender).

It is also important to note that Mr. Homan has never been to prison. This circumstance coupled with his age and his crime of conviction means Mr. Homan will be susceptible to intimidation and abuse while in prison. Thus, a sentence of 180 months imprisonment provides serious punishment to Mr. Homan.

### **Affording Adequate Deterrence and Protecting the Public from Mr. Homan**

A sentence of 180 months will afford adequate deterrence to Mr. Homan and others contemplating engaging in similar conduct. Fifteen years in a federal prison is a substantial sentence and sends a very strong message to Mr. Homan and others that making or producing child pornography has severe consequences. Upon his release from a fifteen year sentence, Mr. Homan will be in his 80's. At this advanced age, Mr. Homan is not likely to repeat this offense. The public

will not have to be protected from Mr. Homan at this point in his life. Thus, a sentence of 180 months imprisonment also satisfies the factor of protecting the public from Mr. Homan.

### Providing Needed Educational/Vocational Training/Medical Care/ Correctional Treatment

Mr. Homan did not graduate from high school but has worked all of his adult life until he was arrested on June 25, 2015. For this reason - and his age upon release from a fifteen year sentence - Mr. Homan does not need vocational training.

However, Mr. Homan needs sex offender treatment and is willing to receive such while he is in prison. Fifteen years is sufficient to provide this necessary treatment to Mr. Homan.

Research on sex offender treatment has shown that "treatment produced a small but statistically significant reduction in both sexual and overall recidivism."[4] A 2006 study in particular "found that sex offenders who received treatment recidivated at a significantly lower rate than sex offenders who did not receive treatment."[5] The research also found that the newer programs were "found to have a positive treatment effect," as opposed to older programs that had "a small but nonsignificant increase in sexual recidivism."[6]

Other research has shown that cognitive and behavioral sexual offender treatment are "effective in reducing inappropriate sexual urges."[7] Specifically, "[b]ehavioral treatment reduces

---

[4] Roger Przybylski, *The Effectiveness of Treatment for Adult Sexual Offenders*, p.2, U.S. DEPARTMENT OF JUSTICE (July 2015), http://www.smart.gov/pdfs/TheEffectivenessofTreatmentforAdultSexualOffenders.pdf.
[5] *Id*. at 3.
[6] *Id*. at 2.
[7] Victoria Miceli, *Analyzing the Effectiveness of Rehabilitation Programs*, p. 14, UNIVERSITY OF RHODE ISLAND (2009), http://digitalcommons.uri.edu/cgi/viewcontent.cgi?article=1160&context=srhonorsprog.

sexual urges through modification of sexual preferences."[8] In sum, it is generally understood that sex offenders who do receive some sort of sex offender treatment are more successful after incarceration than those who do not.

### Kinds of Sentences Available/Sentencing Range and Guideline Policies

The offense of conviction has a statutory range of punishment of fifteen (15) years imprisonment to life imprisonment. Mr. Homan will also be sentenced to a term of supervised release following his term of imprisonment - likely a term of life. The current guideline range advises a range of imprisonment of 360 months - restricted from an actual recommended range of life imprisonment. Thirty years - a life sentence for Mr. Homan - is substantially greater than necessary to satisfy the factors of 18 U.S.C. § 3553(a).

### Unwarranted Sentencing Disparity

The factor of avoiding unwarranted sentencing disparity encourages guideline sentences and thus has the practical effect of improperly elevating this sentencing factor over the other factors of §3553(a). This factor was one of the driving reasons behind the adoption of the Guidelines. While unwarranted sentencing disparity is a laudable goal, strict adherence to the Guidelines shifts the focus away from the individual defendant being sentenced. Moreover, strict adherence to this particular factor results in the guidelines being *de facto* mandatory.

The variance sentence requested by the defense does not lead to unwarranted disparity due to Mr. Homan's age (71), his poor health and the unlikelihood that he will engage in similar offense conduct after receiving sex offender treatment once he is released from federal prison.

---

[8] *Id*.

**Conclusion**

For the reasons advanced above, Defendant respectfully moves for a sentence of 180 months imprisonment. Such a sentence is sufficient to comply with the factors set forth in 18 U.S.C. § 3553(a). The defense also respectfully requests that the Court recommend to the Bureau of Prisons that Mr. Homan receive the appropriate treatment and counseling while he is incarcerated.

                                  Respectfully submitted,

                                  LARRY CARL HOMAN

                                  By      /s/
                                         Of Counsel

Keith Loren Kimball
VSB No. 31406
Supervisory Assistant Federal Public Defender
Attorney for Defendant Larry Carl Homan
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
757-457-0800 (telephone)
757-457-0880 (telefax)
keith_kimball@fd.org

**CERTIFICATE OF SERVICE**

I certify that on this 14th day of March, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Elizabeth Yusi, Esquire
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
elizabeth.yusi@usdoj.gov

And I hereby certify that I have electronically mailed and mailed the document by U.S. Mail to the following non-filing user:

Kristie Milby
U.S. Probation Officer
U.S. Probation Office
827 Diligence Drive
Suite 210
Newport News, Virginia 23606

                                                  /s/
                                      Keith Loren Kimball
                                      VSB No.: 31046
                                      Attorney for Defendant Larry Carl Homan
                                      Supervisory Assistant Federal Public Defender
                                      Office of the Federal Public Defender
                                      150 Boush Street, Suite 403
                                      Norfolk, Virginia 23510
                                      757-457-0870 (telephone)
                                      757-457-0880 (telefax)
                                      keith_kimball@fd.org